UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――

MOHAMED DARAMY KAMARA,

              Petitioner,

    v.                                  24-CV-743-LJV
                                            DECISION & ORDER
MERRICK B. GARLAND, et al.,

              Respondents.
―――――――――――――――――――――――――

    Mohamed Daramy Kamara has been detained in the custody of the United States Department of Homeland Security ("DHS") for more than ten months. Docket Item 1 at 3, ¶ 6.[1] On August 8, 2024, Kamara filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. Docket Item 1. On September 30, 2024, the government filed a letter in response to the petition. Docket Item 4.

    For the reasons that follow, this Court grants Kamara's petition in part.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

    Kamara is a native and citizen of Sierra Leone. *See* Docket Item 1 at 2, ¶ 2; 3, ¶ 6. He entered the United States on December 13, 2002. *Id.* at 2, ¶ 2; 10, ¶ 31. On

―――――――――――――――――――――――――

[1] Throughout this decision, page numbers in docket citations refer to ECF pagination. Because Kamara inconsistently numbers the paragraphs in his petition, the Court refers to the relevant pages and, if applicable, paragraph numbers, when citing it.

[2] The following facts are taken from Kamara's petition, Docket Item 1, and the government's response, Docket Item 4, and are largely undisputed. The single inconsistency is discussed below. The Court also takes judicial notice of Kamara's

May 19, 2022, Kamara "was convicted of [a]ssault in the [s]econd [d]egree" under N.Y. Penal Law § 120.05 and "sentenced to two years['] imprisonment."  Docket Item 1 at 10, ¶ 32.  About a year later, on April 18, 2023—while Kamara was serving his state sentence—DHS issued a "Notice to Appear," charging that Kamara was subject to removal from the United States under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537.  *See id.* at 10, ¶ 33.  More specifically, DHS charged that Kamara was subject to removal under section 1227(a)(2)(A)(iii) of the INA for having been convicted of an aggravated felony.  Docket Item 1 at 10, ¶¶ 32, 34; Docket Item 4 at 2; *see* 8 U.S.C. § 1227(a)(2)(A)(iii).

In January 2024, an immigration judge denied Kamara's "application for protection under the [C]onvention against [T]orture" and "ordered him removed" to Sierra Leone.  Docket Item 1 at 11, ¶ 35.  Kamara appealed that ruling to the Board of Immigration Appeals, which denied his appeal, Docket Item 4 at 2; he then filed a petition for review in the United States Court of Appeals for the Second Circuit, *see Kamara v. Garland*, Case No. 24-1688 (2d Cir. 2024).  That petition remains pending. *Id.*; Docket Item 1 at 11, ¶ 37.  In fact, because no "briefing schedule" has been set for Kamara's petition, he is "expected to remain in custody for however long it takes to brief and argue" that petition, "which could be at least several months."  Docket Item 4 at 3-4.

At some point during his immigration proceedings, Kamara was moved from state custody into DHS custody at BFDF, where he now has been held for at least ten

---

immigration proceedings.  *See Pina Morocho v. Mayorkas*, 2023 WL 1995283, at *3-4 (S.D.N.Y. Jan. 25, 2023) (taking judicial notice of petitioner's immigration proceedings in considering petition).

months.[3]  Docket Item 1 at 2, ¶ 2; 15, ¶ 13; Docket Item 4 at 2.  He filed this petition

seeking an order that the government release him from detention or, "[i]n the

alternative," an order "requiring [the government] to provide [him] with an individualized

bond hearing."  Docket Item 1 at 22-23.  The government responded as described

above.  Docket Item 4.

## DISCUSSION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus

whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of

the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28

U.S.C. § 2241(c)(3)).  Kamara alleges that his continued detention violates his right to

procedural due process under the Constitution.  *See* Docket Item 1 at 2, ¶ 1.[4]  For the

reasons that follow, this Court agrees.

## I.   DUE PROCESS UNDER THE INA

Section 1226 of the INA "generally governs the process of . . . detaining

[noncitizens]" during removal proceedings.  *Jennings v. Rodriguez*, 583 U.S. 281, 288-

---

[3] In his petition, which was signed on August 1, 2024, Kamara says that he has been detained at BFDF for "over eight months," suggesting that his detention began in or around November 2023.  Docket Item 1 at 2, ¶ 2; 15, ¶ 13.  The letter filed by the government, however, says that Kamara has been held for about 14 months, noting that he was detained by DHS following his "release from state custody" in July 2023.  *See* Docket Item 4 at 2-3.  Nonetheless, regardless of whether he has been in DHS custody since November of last year—now more than ten months—or longer, due process demands that he receive a bond hearing.  *See infra*.

[4] There are two paragraphs numbered "1" on this page; this citation refers to the second one.

89 (2018) (citing 8 U.S.C. § 1226).  While the government "may release" noncitizens detained under section 1226(a), those detained under section 1226(c)—which applies to noncitizens who have committed certain criminal offenses or engaged in certain terrorist activities—must be detained unless narrow circumstances related to witness protection are met.  *Id.* (citing 8 U.S.C. § 1226(c)).  In *Jennings v. Rodriguez*, the Supreme Court held that the statute does not require—and in fact prohibits—the government from offering a noncitizen detained under section 1226(c) the opportunity to challenge the detention at a bond hearing.  *Id.* at 303.  The Court declined to determine whether the Constitution nonetheless requires that noncitizens held under section 1226(c) be afforded such an opportunity.  *Id.* at 312.

In *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), however, the Second Circuit answered that question, holding that "a noncitizen's constitutional right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing."  *Id.* at 138.  Further, it held that the three-factor balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), "supplies the proper framework for determining when and what additional procedural protections are due such a detainee."  *Black*, 103 F.4th at 138.  More specifically, the Second Circuit explained that courts should analyze a noncitizen's due process challenge to his detention "under the *Mathews* factors," considering:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Black*, 103 F.4th at 151 (quoting *Mathews*, 424 U.S. at 335).

## II.      KAMARA'S PETITION

Kamara—like the noncitizens in *Black*—is detained under section 1226(c).[5] Docket Item 1 at 2, ¶ 4; 22, ¶ 33.  In fact, the government has conceded that case's applicability here.  In its response to Kamara's petition, the government says that it "disagrees with the Second Circuit's decision in *Black v. Decker*" but acknowledges that "this Court is bound by *Black* and that applying *Black* in this case likely would lead to a grant of [Kamara's] habeas petition."  Docket Item 4 at 3-4.  For the reasons explained in this opinion, the Court agrees:  *Black* controls, and applying the *Mathews* factors necessarily requires this Court to grant Kamara's petition in part.

### A.      The Private Interest Affected

As an initial matter, the Court finds that the "private interest affected" is a compelling one.  Indeed, as the Second Circuit explained in *Black*, the private interest implicated in immigration detention cases is "the most significant liberty interest there

---

[5] At one point in his petition, Kamara appears to allege that he is being detained under section 1226(a).  Docket Item 1 at 5, ¶ 18.  The Court assumes this to be a mistake:  Elsewhere in his petition, he says that he is being held under section 1226(c).  *Id.* at 2, ¶ 4; 22, ¶ 33.  In any event, the statutory basis for his detention is a legal question, and the facts here make clear that Kamara—who was ordered removed based on his commission of an aggravated felony—is subject to section 1226(c).

In its response to the petition, the government notes its longstanding disagreement with this Court regarding the effect of the government's "Forbearance Agreement" with the Second Circuit, which this Court repeatedly has held to operate as a "court-ordered stay," such that those noncitizens whose petitions for review are pending before the Second Circuit and who have moved for a stay of their removal are deemed to be detained under 8 U.S.C. § 1226, rather than 8 U.S.C. § 1231.  *See, e.g.*, *Hemans v. Searls*, 2019 WL 955353, at *3 (W.D.N.Y. Feb. 27, 2019).  In light of this Court's previous rulings, the government "does not press that issue further here," Docket Item 4 at 2 n.2, and this Court indeed sees no reason to reconsider the conclusion it reached in its previous decisions.

is—the interest in being free from imprisonment."  103 F.4th at 151 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)).  And while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999), Kamara has lived in this country for more than two decades, Docket Item 1 at 2, ¶ 2.  Further, he has appealed the immigration judge's removal order, and his case remains pending before the Second Circuit.  *See Kamara v. Garland*, Case No. 24-1688; Docket Item 4 at 2-4.  So his interest in liberty *in the United States* must be strong indeed for him to subject himself to prolonged detention during the appeals process, which can be lengthy.  *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

Moreover, Kamara has been in DHS custody at least for more than ten months. Docket Item 1; *see supra* note 3.  In *Black*, the Second Circuit held that even a "seven-month-long" detention absent procedural protections was a "serious[] infringe[ment]" of liberty.  103 F.4th at 151.  And while, like the petitioners in *Black*, Kamara's "detention[] in some sense w[as] the result of a criminal adjudication, since a conviction was the premise for applying section 1226(c)," he has "served his entire sentence."  *Id.* at 151; *see* Docket Item 4 at 2 (noting that Kamara was detained by DHS "upon his release from criminal incarceration").  "And [his current] detention[] did not arise from new or unpunished conduct."  *Black*, 103 F.4th at 151 (citation and internal quotation marks omitted); Docket Item 4 at 2.

In sum, as in *Black*, "the first *Mathews* factor weighs heavily in favor of" Kamara. *See Black*, 103 F.4th at 152.

**B.      The Risk of Erroneous Deprivation and the Value of Additional Procedural Safeguards**

This Court concludes that in light of the procedures used thus far, there is a significant risk of an erroneous deprivation of Kamara's liberty.  As the Second Circuit explained, "the 'procedures used' for section 1226(c) detainees are very few" and "include no mechanism for a detainee's release, nor for individualized review of the need for detention."  *Black*, 103 F.4th at 152.  In fact, as already noted, section 1226(c) prohibits the government from offering a detainee the opportunity to challenge whether he is actually a danger or a flight risk.  *See Jennings*, 583 U.S. at 303.  So "[i]n the absence of any meaningful initial procedural safeguards, . . . almost *any* additional procedural safeguards at some point in the detention would add value."  *Black*, 103 F.4th at 153.

Indeed, Kamara has had no opportunity to challenge the basis for his detention—to argue, for instance, that he poses no danger to the community or risk of flight while his appeal proceeds.  *See id.*  So this Court finds—just as the Second Circuit did in *Black*—that an "individualized bond hearing at which an [immigration judge could] consider" whether those factors justify Kamara's detention would add significant value here.  *Id.*  The second factor therefore also weighs in Kamara's favor.

**C.      The Government's Interest**

Finally, this Court recognizes that the government's interest in detaining Kamara also may be strong.  In mandating the detention of noncitizens who have committed certain crimes, section 1226(c) reflects a congressional purpose of reducing the risk of flight and danger to the community.  *See Demore v. Kim*, 538 U.S. 510, 518-19 (2003);

*Jennings*, 583 U.S. at 303-04.  It is "well[ ]established" that the government has a "legitimate" and compelling interest in both those aims.  *Black*, 103 F.4th at 153.

But those interests do not outweigh Kamara's liberty interest.  As already explained, Kamara has had no opportunity to challenge the statutory assumption that there is *any* risk he will flee or endanger the community while his case proceeds.  And so, absent a bond hearing, it is not even clear that Kamara's detention is required to serve the government's interests.  Further, the government has not identified any special interests here that would justify Kamara's continued detention without an individualized bond hearing.  *See* Docket Item 4.

The third factor therefore weighs in Kamara's favor as well.

\*

In sum, the Court finds that, under the *Mathews* framework, Kamara's continued detention absent any procedural protections violates the Due Process Clause.  The Court nonetheless declines to grant Kamara's first request for relief:  an order for his immediate release.  *See* Docket Item 1 at 22-23.  Instead, in keeping with the Second Circuit's reasoning, this Court finds that an individualized bond hearing where the government bears the burden of justifying the petitioner's continued detention by clear and convincing evidence is the proper remedy in cases of unreasonably prolonged detention under section 1226(c).  *See Black*, 103 F.4th 133 at 155-159.

Thus, consistent with *Black*, the Court concludes that all three *Mathews* factors weigh in Kamara's favor and that due process entitles him to an individualized bond hearing before an immigration judge where the government must show, by clear and convincing evidence, that his continued detention is necessary.  *Id.*  Further, at that

hearing, the immigration judge must "consider [Kamara's] ability to pay and alternatives to detention" in making that determination and setting any bond amount.  *See id.* at 158.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release Kamara from detention unless a neutral decisionmaker conducts an individualized hearing to determine whether his continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Kamara's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community.  Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests.  In other words, the decisionmaker must find that no condition or combination of conditions of release can reasonably ensure Kamara's appearance and the safety of the community—that is, even with conditions, Kamara presents an identified and articulable risk of flight or a threat to an individual or the community; and it is further

ORDERED that the immigration judge must consider Kamara's ability to pay when setting any bond amount; and it is further

ORDERED that **within 30 days of the date of this decision and order** the government shall file an affidavit certifying compliance with this order.  That affidavit should include a copy of the bond hearing order.

SO ORDERED.

Dated:     October 11, 2024
              Buffalo, New York

                           */s/ Lawrence J. Vilardo*
                           LAWRENCE J. VILARDO
                           UNITED STATES DISTRICT JUDGE