UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────

MOHAMED DARAMY KAMARA,

          Petitioner,

   v.                                 24-CV-743-LJV
                                          DECISION & ORDER

MERRICK B. GARLAND et al.,

          Respondents.

───────────────────────────────────

      The petitioner, Mohamed Daramy Kamara, has moved to enforce this Court's order granting him an individualized bond hearing as to why his continued detention in the custody of Immigration and Customs Enforcement ("ICE") is justified.  Docket Item 17.  The government responded to that motion, Docket Item 19; Kamara did not reply, and the time to do so has passed, *see* Docket Item 18.

      For the reasons that follow, Kamara's motion to enforce is denied.

## **BACKGROUND**[1]

      Kamara, a native and citizen of Sierra Leone, has been detained in ICE custody since 2023.  *Kamara v. Garland*, 2024 WL 4470868, at *1 & n.3 (W.D.N.Y. Oct. 11, 2024); *see also* Docket Item 1.  On August 8, 2024, he filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York.  Docket Item 1.

─────────────────────

      [1] The Court assumes familiarity with the factual and procedural background, including that in its previous decision.  *Kamara v. Garland*, 2024 WL 4470868 (W.D.N.Y. Oct. 11, 2024).

On October 11, 2024, this Court granted Kamara's petition in part. *Kamara*, 2024 WL 4470868, at *4. More specifically, the Court ordered that "within 14 calendar days of the date of th[e] decision and order, the government must release Kamara from detention unless a neutral decisionmaker conducts an individualized hearing to determine whether his continued detention is justified." *Id.* (bold omitted). It further ordered that at that hearing,

> the government has the burden of demonstrating by clear and convincing evidence that Kamara's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community. Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests. In other words, the decisionmaker must find that no condition or combination of conditions of release can reasonably ensure Kamara's appearance and the safety of the community—that is, even with conditions, Kamara presents an identified and articulable risk of flight or a threat to an individual or the community.

*Id.* Finally, the Court required the decisionmaker to "consider Kamara's ability to pay when setting any bond amount." *Id.*

Following the Court's order, Kamara's bond hearing was scheduled for October 21, 2024. Docket Item 7. Kamara then moved, through counsel, for a brief adjournment of the hearing until November 1, 2024, so that counsel could have time to prepare, and the immigration judge ("IJ") granted that request. *See id.* The government then asked this Court for an extension of time to comply with this Court's order, *see id.*, and this Court granted that request, *see* Docket Item 10. More specifically, this Court extended the government's time to provide Kamara with a bond hearing until November 4, 2024, to allow him time to "meet with counsel and prepare for the hearing." *See id.*

On November 1 and 4, 2024, IJ Brian J. Counihan conducted the bond hearing. *See* Docket Item 13 at 4. On November 5, 2024, the government filed a letter informing

this Court of the IJ's decision to deny Kamara bond and attached a copy of the decision. *Id.* at 1 (government's letter); *id.* at 2-13 (IJ's decision).

After more than a month passed and Kamara did not challenge that decision as inconsistent with this Court's order, this Court closed the case, finding that it had disposed "of the matter as law and justice require[d]."  Docket Item 15 (quoting 28 U.S.C. § 2243).  Several weeks later, Kamara moved to enforce this Court's order granting in part his petition for a writ of habeas corpus, arguing that the bond hearing he was given did not comply with this Court's order.[2]  Docket Item 17.  The government then responded as noted above.  Docket Item 19.

## DISCUSSION

Kamara argues that the government—including the IJ who conducted his hearing—failed to comply with this Court's directives in four ways.  *See* Docket Item 17 at 3-9.  More specifically, he argues that: (1) the IJ who presided over his hearing was not a neutral decisionmaker, *id.* at 4; (2) the IJ did not comply with the timing requirements set by the Court, *id.* at 3-4; (3) the IJ erred in admitting certain evidence, *id.* at 3-6; and (4) the IJ's finding of dangerousness was not supported by the evidence, *id.* at 6-9.  The Court considers each of his arguments in turn.

---

[2] Kamara also asked the Court to reopen his case because the lawyer who represented him at his bond hearing did not continue to represent him (and has not appeared in this case).  *See* Docket Item 17 at 12.  While the Court declines to reopen the case, it appreciates the difficulties of proceeding pro se and has carefully considered Kamara's arguments—especially so in light of his pro se status.

## I.     FAILURE TO PROVIDE A NEUTRAL DECISIONMAKER

Kamara first argues that the government violated this Court's order because IJ Counihan, who presided over Kamara's bond hearing, was not a "neutral decisionmaker." *Id.* at 2, 4 (quoting *Kamara*, 2024 WL 4470868, at *4).

The government was required to provide Kamara with a bond hearing before an unbiased decisionmaker. *See Kamara*, 2024 WL 4470868, at *4. An IJ is presumptively just that. As the Second Circuit has explained, "an immigration judge has a responsibility to function as a neutral, impartial arbiter and must be careful to refrain from assuming the role of advocate for either party." *Islam v. Gonzales*, 469 F.3d 53, 55 (2d Cir. 2006).

Nevertheless, "when an IJ's conduct results in the appearance of bias or hostility such that [a court] cannot conduct a meaningful review of the decision below, [it should] remand." *Id.* For example, remand has been deemed appropriate when an IJ "repeatedly addressed [a noncitizen] in an argumentative, sarcastic, impolite, and overly hostile manner that went beyond fact-finding and questioning" and "created an atmosphere in which it might have been difficult for [the noncitizen] to advocate fully on his own behalf." *Id.* at 55-56. And along the same lines, the Second Circuit has remanded when "questioning by the IJ [was] at least inappropriate and at worst indicative of bias." *Huang v. Gonzales*, 453 F.3d 142, 148 (2d Cir. 2006).

But there is no such evidence of bias here, and Kamara makes no more than conclusory assertions that IJ Counihan was biased against him. *See* Docket Item 17 at 3-4. For example, he asserts that IJ Counihan necessarily was prejudiced against him because Counihan had previously presided over Kamara's immigration proceedings and denied relief. *See id.* But "there is nothing inherently improper [about] the same IJ

4

presiding over both the removal and bond proceedings." *Dela Cruz v. Napolitano*, 764 F. Supp. 2d 1197, 1204 (S.D. Cal. 2011) (citing *Joseph v. Holder*, 600 F.3d 1235, 1242 (9th Cir. 2010)).  Indeed, outside the immigration context, the Second Circuit has noted that a judge's "prior rulings are . . . not a basis for disqualification" absent some other evidence of prejudice or bias.  *See Gallop v. Cheney*, 645 F.3d 519, 520 (2d Cir. 2011).

So too here:  The mere fact that IJ Counihan previously ruled against Kamara during his immigration proceedings does not mean that Counihan could not serve as a neutral decisionmaker in Kamara's bond hearing.  And the fact that at the more recent hearing, IJ Counihan denied Kamara bond and made certain evidentiary rulings in favor of the government does not, by itself, suggest prejudice.  On the contrary, and as the government notes, Docket Item 19 at 5, the IJ's opinion shows that he carefully considered the evidence and arguments offered by both sides, *see* Docket Item 13 at 2-13.

In sum, because Kamara has not offered any facts showing that the IJ's "conduct result[ed] in the appearance of" any "bias or hostility"—much less a degree of bias or hostility that impairs this Court's ability to conduct a "meaningful review," *see Islam*, 469 F.3d at 55—Kamara has not shown that he was denied a neutral arbiter.

## II.    TIMELINESS OF HEARING

Kamara next argues that IJ Counihan violated this Court's order in holding the hearing when he did.  *See* Docket Item 17 at 3.  More specifically, he says that the "IJ failed to follow [this Court's o]rder to extend . . . Kamara['s] bond hearing until" November 4, 2024; "instead," he says, the IJ "started the hearing on November 1,[ ]2024 and finish[ed it] on November 4,[ ]2024."  *Id.*

As the government observes, Kamara's argument appears to be based on a misunderstanding of this Court's order. *See* Docket Item 19 at 4. In setting November 4, 2024, as the deadline for the government to provide Kamara with a bond hearing, this Court held that Kamara must have the opportunity to contest his detention before a neutral decisionmaker *by* that date—not that his bond hearing could not start *until* that date. *See* Docket Item 10. Indeed, the Court's concern was that Kamara be given a bond hearing in a timely fashion; it was not attempting to dictate the exact date and time when the hearing would take place. Further, and as the government also notes, Kamara does not argue that he "sought an additional adjournment" of the hearing date because he needed more time. *See* Docket Item 19 at 4; *see also* Docket Item 17 at 3. Therefore, the bond hearing was held within the timeframe ordered by this Court, and the Court rejects Kamara's argument that the timing of the hearing violated his rights or this Court's order.

### III.    ADMISSION OF EVIDENCE

Kamara also argues that the IJ erred in admitting into evidence the Pre-sentence Investigation Report ("PSI") prepared in his state case. *See* Docket Item 17 at 4-6. This Court disagrees.

The Federal Rules of Evidence are not strictly applied in immigration proceedings. *See Felzcerek v. INS*, 75 F.3d 112, 116 (2d Cir. 1996) ("[T]he strict rules of evidence do not apply in deportation proceedings."). Moreover, courts have upheld the use of police and prosecutorial records as evidence in immigration bond

proceedings.[3]  *See Vides v. Searls*, 2021 WL 6846277, at *2 (W.D.N.Y. May 13, 2021)

(upholding finding of dangerousness based on IJ's consideration of, among other

evidence, "Form I-213, Pre-sentence Investigation Report, certificate of conviction, and

sentencing transcript"); *see also Singh v. DHS*, 526 F.3d 72, 80 (2d Cir. 2008) ("[A]n IJ

may admit a rap sheet as partial evidence of . . . conviction[s].").  So considering a PSI

is not error without something more.

Kamara nonetheless argues that admitting this particular PSI was error

because—as his counsel asserted at the hearing—it includes "inaccurate" and

"unreliable" information.  Docket Item 17 at 4-6.  And while "the rules of evidence are

not applicable to immigration hearings, the constitutional and statutory guarantees of

due process require that 'the government's choice [of whether to use certain

evidence]  . . . not be wholly unfettered.'"  *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d

674, 681 (9th Cir. 2005) (alterations omitted) (quoting *Saidane v. INS*, 129 F.3d 1063,

1065 (9th Cir. 1997)).

---

[3] Kamara argues that New York State law requires that a PSI remain "confidential," and he cites *United States v. Fernandes*, 115 F. Supp. 3d 375 (W.D.N.Y. 2015), as standing for the proposition that federal courts have upheld this "presumption of confidentiality encoded by the New York statute."  Docket Item 17 at 5.  But the caselaw that Kamara cites pertains to the disclosure of such reports; it does not bar them—once disclosed—from being offered into evidence in other proceedings.  *See* N.Y. Crim. Proc. Law § 390.50 (providing that a PSI "may not be made available to any person or public or private agency except where specifically required or permitted by statute or upon specific authorization of court").  Indeed, *Fernandes* considered a defendant's attempt to subpoena his state PSI.  *See* 115 F. Supp. 3d at 377.  And while in *Fernandes*, the court suggested that the PSI would likely be inadmissible at trial on hearsay grounds, *see id.*, that does not mean that the IJ erred in allowing such evidence to be admitted in immigration proceedings, where "strict rules of evidence do not apply," *see Felzcerek*, 75 F.3d at 116.  In fact, and as noted above, federal courts have upheld the use of such evidence in bond hearings.  *See Vides*, 2021 WL 6846277, at *2.

But IJ Counihan acknowledged the problems with the PSI in his decision, finding that any inaccuracies were not "of such a substantive nature as to render the PSI wholly unreliable."  Docket Item 13 at 4, 7-8.  He therefore admitted the PSI along with all the other evidence offered by both sides and afforded it "the weight it deserves."  *See id.*  And while Kamara takes issue with that statement, *see* Docket Item 17 at 6, this Court finds that the decision to admit the PSI and to give it whatever weight the IJ found appropriate was not error.

## IV.   FINDING OF DANGEROUSNESS AND CONSIDERATION OF ALTERNATIVES TO DETENTION

Finally, Kamara says that IJ Counihan erred in finding that Kamara would be a danger to the community if released and in failing to adequately consider alternatives to detention.  *See id.* at 6-9.  Again, this Court disagrees.

As noted above, this Court's order required the government to bear "the burden of demonstrating by clear and convincing evidence that Kamara's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community."  *Kamara*, 2024 WL 4470868, at *4.  And it further specified that the decisionmaker must consider "alternatives to detention" in making that determination.  *See id.*

Of course, the government was required to follow that direction.  But "[i]n reviewing [Kamara's] motion to enforce, 'it is important to emphasize that the Court's task is narrow: it is to determine whether [the government] complied with the [Court's o]rder, not to review the hearing evidence de novo.'"  *Blandon v. Barr*, 434 F. Supp. 3d 30, 38 (W.D.N.Y. Jan. 22, 2020) (italics omitted) (quoting *Apollinaire v. Barr*, 2019 WL 4023560, at *3 (W.D.N.Y. Aug. 27, 2019)); *see Gutierrez Cupido v. Barr*, 2020 WL

103477, at *3 (W.D.N.Y. Jan. 9, 2020) (same); *see also Sol v. INS*, 274 F.3d 648, 651
(2d Cir. 2001) (declining to review noncitizen's assertion that "the decisions of the IJ . . .
lacked adequate support in the record" because "federal jurisdiction over [section] 2241
petitions does not extend to review of discretionary determinations by the IJ").  For that
reason, an IJ's finding of "clear and convincing evidence" may be overturned only in
limited circumstances, such as when "the evidence itself could not—as a matter of
law—have supported the adjudicator's conclusion" or when it is "clear from the
adjudicator's opinion itself that [the IJ] simply did not apply the correct standard to the
facts."  *Mathon*, 623 F. Supp. 3d at 213-14 (quoting *Hechavarria v. Whitaker*, 358 F.
Supp. 3d 227, 240 (W.D.N.Y. 2019)).

    Neither circumstance applies here.  As an initial matter, Kamara does not argue
the second of those possibilities: that the IJ applied the incorrect legal standard at the
bond hearing.  *See generally* Docket Item 17.  That is for good reason:  As the
government correctly notes, Docket Item 19 at 6-7, IJ Counihan clearly followed this
Court's instruction and required the government to bear the burden of proof by clear and
convincing evidence, *see* Docket Item 13 at 8-12.

    Instead, Kamara contends that the evidence did not support the IJ's finding; in
particular, he says, the IJ assigned undue weight to certain evidence, including the
PSI.[4]  *See* Docket Item 17 at 4-8.  But that argument also fails.  It is true that records of

_____

[4] Kamara also argues that the IJ erred in characterizing his 2022 conviction for
assault as a "particularly serious crime."  Docket Item 17 at 7.  But that determination
was made in Kamara's other immigration proceedings and was relevant to his eligibility
for certain immigration relief, such as withholding of removal and asylum, rather than his
present "dangerousness."  *See* Docket Item 13 at 10; *see also Nethagani v. Mukasey*,
532 F.3d 150, 155 (2d Cir. 2008).  Therefore, this Court will not revisit that
determination here.

criminal convictions—standing by themselves—cannot constitute "clear and convincing evidence" of dangerousness. *See Blandon*, 434 F. Supp. 3d at 39. But IJ Counihan's finding of dangerousness was not based simply on the PSI. *See* Docket Item 13 at 8-10. Rather, that finding was based on the IJ's review of several considerations, including Kamara's criminal history and his 2022 conviction for assault; the multiple orders of protection issued against him; and his more recent altercations at BFDF. *See id.* Moreover, IJ Counihan also weighed the letters of support submitted on behalf of Kamara, noting that Kamara clearly "is a committed father." *See id.* at 10-11.

In other words, IJ Counihan did what he was supposed to do: weigh all the evidence and "consider one or more factors relevant to the currency of the threat, such as the recency of the criminal offense, or the petitioner's behavior subsequent to the conviction." *Blandon*, 434 F. Supp. 3d at 39-40 (internal citations omitted). In light of that analysis—and especially because this Court cannot revisit the weight the IJ assigned to any particular piece of evidence—this Court cannot and does not find that the evidence presented, as a matter of law, could not support IJ Counihan's finding. *See Adejola v. Barr*, 439 F. Supp. 3d 120, 130 (W.D.N.Y. 2020) (holding that "[t]o the extent [a noncitizen] . . . argu[es] that the IJ's assessment of th[e] evidence was wrong or that [the IJ] erred in . . . credibility determinations or the weight [the IJ] gave to particular aspects of the record, such arguments are beyond the scope of this Court's jurisdiction"); *see also Apollinaire*, 2019 WL 4023560, at *3 (noting that in reviewing immigration bond determinations, "the question [for the court] is 'whether the [IJ] relied upon proof that could not possibly establish by clear and convincing evidence'" the

government's case (quoting *Nguti v. Sessions*, 2017 WL 5891328, at *2 (W.D.N.Y. Nov. 29, 2017))); *Medley v. Decker*, 2020 WL 1033344, at *3 (S.D.N.Y. Mar. 3, 2020) (same).

Finally, while Kamara argues that IJ Counihan "fail[ed] to consider alternative[s] to detention," *see* Docket Item 17 at 8, that simply is not the case. In fact, the IJ explicitly and precisely considered such alternatives in his decision. *See* Docket Item 13 at 11-12.

Kamara's real issue is with the way the IJ analyzed the issue: He argues that the IJ impermissibly attempted to predict his future behavior and the effectiveness of the options that might ameliorate the risks of that behavior. *See* Docket Item 17 at 8-9. But as the government notes, in a bond hearing, it is the IJ's job "to predict [a p]etitioner's likelihood to engage in crime or flight, and whether any alternatives to detention would lessen such likelihood." Docket Item 19 at 7. And this Court cannot conclude that IJ Counihan's analysis of the alternatives to mitigate the risk was, as a matter of law, incorrect. *See* Docket Item 13 at 2-13.

Again, the Court's purview here is narrow: "[I]t is not this Court's role to engage in a re-weighing of the evidence considered by the IJ." *Adejola*, 439 F. Supp. 3d at 130. The question is not whether this Court would, in the first instance, have arrived at the same conclusion that the IJ did; rather, it is whether the IJ complied with this Court's order. And because—for all the reasons explained above—IJ Counihan did that here, Kamara's motion to enforce this Court's order fails.

## **CONCLUSION**

For the reasons stated above, Kamara's motion to enforce is DENIED.

SO ORDERED.

Dated:   June 11, 2025
         Buffalo, New York


         */s/ Lawrence J. Vilardo*
         LAWRENCE J. VILARDO
         UNITED STATES DISTRICT JUDGE